Baldwin, J.
The bill and amended bill in this case may be treated as one, and the demurrers thereto must be regarded as conceding that the consideration of the promise on which the judgment at law was recovered, was money lost at unlawful gaming — that the merits of the cause were not developed on the trial at law, by reason of the extraordinary circumstance that the only witness before the jury, examined by the plaintiff and relied on by the defendant, and who was present at the gaming, and proved the promise then made to the plain *647 tiff to pay him 500 dollars, failed to prove the consideration of the promise, either designedly or from lapse of memory, though previous to the trial he had assured the defendant that he was conusant of, and would prove the gaming consideration, and that in consequence of the turn which the cause thus took, and the want of a discovery from the plaintiff, the defendant was surprised and disabled from defending himself successfully at law. The gaming consideration and the surprise being thus conceded, if no relief can be had in equity, it must be upon the mere ground that it ought to have been sought in the Court of Law by an application for a new trial, and this not having been done, that the verdict and judgment are conclusive and unimpeachable.
It is doubless true, that the decision of a controversy by a Court of competent jurisdiction, whether of common law or equity, upon a full and fair trial of the merits, cannot be re-examined, or the matter again drawn in question, unless in an appellate forum; and it forms no exception to the rule, in the case of a judgment at law, that a Court of Equity would previously have had a concurrent jurisdiction over the subject. The reason of the rule is too obvious to require exposition.
It is also true, that another rule repels from a Court of Equity a complainant who has been subjected to the recovery of a demand in a Court of Law, against which he had a legal defence that he comes to assert, but which he had an opportunity of making, and declined or neglected to make in the legal forum. This rule is necessary, not only to terminate litigation, but to preserve the boundaries between legal and equitable jurisdictions, which would otherwise be disturbed at the will of the party, and to the prejudice of the common law jury trial, and viva voce examination, which have priority and preference in our system of jurisprudence.
These rules have no application to a case in which a party having a just legal defence, has lost the opportu *648 nity of making it, not by culpable negligence, but by J reason of some fraud, misfortune or accident; nor in which he has made such defence at law, but has been . surprised by some such circumstance, and thereby prevented from developing the merits of his cause. In such a case a Court of Equity will interpose and award him a trial, or new trial at law, or such other relief as may be proper; unless, indeed, the party has had an adequate opportunity of obtaining a new trial by application to the Court of Law. I am not aware of any adjudication by which a defendant, who has been surprised at law, has been repelled from the equitable forum because he did not apply to the Court of Law for a hew trial, or because, having so applied unsuccessfully, he failed to reserve the question, by a bill of exceptions, for the consideration of an appellate tribunal. But I doubt not that the neglect of the party to avail himself of an adequate opportunity to have the verdict against him set aside by the authority of the legal forum, ought as a general rule to exclude him from relief in equity. It must, however, be borne in mind, that the same surprise which has subjected him to an improper verdict, may disable him from applying to the Common Law Court for a new trial, or that circumstances afterwards transpiring may serve to shew, that it was not then in his power to sustain the merits of his application, by such other evidence as might have been requisite, in addition to his own affidavit.
A gaming security or consideration, however, forms an exception to the general rule requiring a defendant at law to avail himself there of a good legal defence to the action. Our act of 1748, (1 Rev. Code, ch. 147, p. 561, taken from the English statute of 9 Anne, c. 14,) not only renders the gaming transaction unlawful, but expressly avoids all promises, contracts, judgments and other securities for money won at play; and its policy is to extirpate an immoral and pernicious practice, inju *649 l'ious not only to parties and their families, but to the" public weal. It therefore behooves Courts of Equity, as well as Courts of Law, to suppress the enforcement of such promises, contracts and securities. A party injured may, at his election, defend himself at law, but he is not bound to avail himself of that opportunity, nor to wait till a verdict is had, nor till an action is brought against him in the legal forum. He may suffer judgment to go against him at law, and restrain proceedings upon it by a bill in equity; or, before or after action brought; file his bill in equity to compel the surrender of any security founded on such unlawful and void consideration, and the refunding of whatever payments may have been made upon it. 1 Story’s Eq., § 302; Woodroffe v. Farnham, 2 Vern. R. 291; Rawden v. Shadwell, Amb. R. 269; Fleetwood v. Jansen, 2 Atk. R. 467; Newman v. Franes, 2 Anst. R. 519; Andrews v. Berry, 3 Anst. R. 634; Woodson v. Barret & Co., 2 Hen. & Munf. 80; Skipwith v. Strother, 3 Rand. 214. A judgment itself, when recovered without defence, is, within the true meaning of the statute, nothing more than a security, though there has been no agreement that it shall operate as such, or be obtained or suffered for that purpose. If this were not so, it .would be easy to evade the provisions of the statute, inasmuch as in most cases it would be difficult to prove that there was such an agreement or understanding; and besides, the mischief is equally great, whether there was or not.
It must be admitted, however, that in an action founded upon a gaming promise or security, if the defendant elects to make his defence at law, and upon a full and fair trial of the question in that forum, a verdict is rendered against him, he cannot be permitted to renew the controversy, upon adverse testimony, in a Court of, Equity; for if this were allowed, it would, in effect, be an appeal from the verdict of a jury. And yet, notwithstanding such election, if the defendant has been *650 surprised at law, by reason of some fraud, misfortune or accident, which has prevented him from having a full and fair trial before the jury, he may still resort for redress to a Court of Equity. Nor will he be precluded ^rom s0 ^ *ts appearing that he had an adequate opportunity of obtaining a new trial by application to the Court of Law. The case of a gaming promise or security is an exception to the general rule on the subject, that rule being derived from the obligation of the party, in most cases, to avail himself of his opportunity to defend himself at law; whereas, in the case of a gaming promise or security, he is under no such obligation. And as he may at first waive all defence at law, and seek relief in equity, so when he has been prevented by surprise from making his defence available at law, he is not bound to pursue it further in that forum ; but may resort to a Court of Equity, which had from the beginning a complete and more searching jurisdiction of the controversy, and which treats all judgments founded on a gaming consideration, where there has been no defence at law, or where there has not been, from adventitious circumstances, a full and fair trial of the question at law, as mere securities.
It will thus be seen that the appellee by his demurrer has rested his case, not upon the merits, but upon the supposed incompetency of a Court of Equity to relieve the complainant against the judgment at law ; and that in truth, equity has jurisdiction of the subject, so far as appears at the present stage of the cause, on the ground that the complainant, as is conceded by the demurrer, was surprised on the trial at law. There is, moreover, a farther question of jurisdiction that requires consideration, inasmuch as it may affect the ultimate decision of the cause. The complainant seeks the interposition of equity, not only on the ground of surprise, but also on the ground that he is entitled to a discovery from his adversary, of the gaming consideration, and to consequent relief thereupon, if obtained.
*651 It is true, as a general rule, that equity will not compel a discovery that would subject the party making it to legal forfeitures or penalties; and it may be conceded (notwithstanding some discrepency of authority, see 2 Story’s Eq., § 1494, note,) that the case of unlawful gaming would fall within this rule, but for the statutory provisions on the subject. Our act of 1748, pursuing the statute of 9 Anne, ch. 14, not only avoids gaming contracts and securities, but gives an action to a loser agaiust a winner, for the recovery back of money paid, within a limited time thereafter; and allows a bill for discovery thereof, with a provision remitting, upon the discovery and repayment, the penalties and forfeitures incurred. The letter of the statute would seem to be confined to the case of actual payment; but the Courts of Equity have given it a liberal construction, so as to make the discovery co-extensive with the broad jurisdiction exercised by them for relief against gaming contracts, judgments and other securities. See the authorities above cited.
A question sometimes arises, whether a bill for the discovery of matter, which has been the subject of a legal defence, can be allowed after a verdict and judgment against the party at law; and it may be inferred from the books as a general proposition, that the party comes too late, unless he shews a sufficient excuse for not having filed his bill sooner. But this is not applicable to a gaming promise or security, in regard to which equity has complete original jurisdiction, both for discovery and relief; and though, when a verdict and judgment have been rendered against the party aggrieved, upon a full and fair trial at law, he is thereby concluded as to adverse evidence; yet, he is not thereby precluded from a discovery in equity, and relief there, upon such discovery, if obtained. And there is no good reason to the contrary; for the admission of such gaming consideration, in an answer to such bill for a discovery, shews *652 that the defence at law failed from a want of evidence to establish the truth ; and the policy of preventing pro-traded litigation, must yield, in such cases, to the higher policy of ferreting out and suppressing violations of the statutes against unlawful gaming; which latter policy the Legislature has anxiously pursued by numerous stringent enactments, and by a sweeping provision that all acts against gaming shall be construed as remedial statutes.
It seems to me, therefore, that the Circuit Court properly overruled the demurrers to the original and amended bills; and consequently that the appellant must answer the same, in order that the cause be proceeded in to a final hearing, upon the principles that properly belong to it, which, in my opinion, are those above indicated. In that view of the case, the final result must be, that if the answer should make the discovery sought by the bills, to wit, that the consideration of the promise upon which the judgment at law is founded, was money lost at unlawful gaming, then a perpetuation of the injunction is to follow as a matter of course. But if the answer should put in issue the material allegations of the bills, then it will be incumbent upon the complainant to prove the gaming consideration, and also the surprise ; upon sufficient proof of which he will be entitled to relief, either by a perpetuation of the injunction, or a new trial at law, according to the sound discretion of the Court.
Brooke, J. In this case I think the Chancellor was correct in affording the relief prayed for in the bill. This Court has never exacted the same degree of diligence from the defendant at law in gaming, as in ordinary cases. It has gone on the principle that a public injury was complained of, which if committed, ought to be remedied by all Courts.
*653 Gaming becomes a passion which controls reason and prudence, and ruins the best characters in other respects, in the community. Iti this case the defendant at law was only negligent in his defence, in that he too confidently relied on the plaintiff’s witness who proved the promise, to prove the gaming consideration of that promise. In this he was disappointed, and I think he ought to have an opportunity of proving it by other evidence.
Cabell, P. and Allen, J. concurred in the affirmance of the decrees of the Court below.
Daniel, J. dissented.